UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR 07-0028ML |
| | ) | |
| JASON GILLIAM | ) | |

MOTION FOR SENTENCE CONSIDERATION

Now comes Jason Gilliam, the Defendant in the above captioned matter, and moves this Honorable Court, pursuant to Local Rule of Criminal Procedure 32 (2006), to consider and impose a sentence that is sufficient, but not greater than necessary, in compliance with18 U.S.C. § 3553(a), and below the suggested advisory guideline range. After considering all the appropriate information present in this case, the Court should conclude that the advisory guidelines call for a sentence longer than necessary. Mr. Gilliam requests the Court impose the statutory mandatory minimum sentence of 60 months followed supervised release with the appropriate conditions. Under the unique circumstances presented here, this sentence will be sufficient to satisfy the purposes of sentencing.

Respectfully submitted
Jason Gilliam
By his attorney,

/s/ Kevin J. Fitzgerald, 5775
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

CERTIFICATION

I hereby certify that a copy of this motion was hand-delivered to Heather McLoughlin, United States Probation Officer, and Sandra Beckner, Assistant United States Attorney, on December 7, 2007.

/s/ Kevin J. Fitzgerald

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR 07-0028ML |
| | ) | |
| JASON GILLIAM | ) | |

---

MEMORANDUM IN SUPPORT OF SENTENCING

I. Introduction

Mr. Gilliam respectfully submits this memorandum to assist the Court in determining a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of sentencing. 18 U.S.C. § 3553(a) (2005). Additionally, Mr. Gilliam submits this memorandum in support of his Motion for Sentencing Consideration advocating for a sentence below the suggested guideline range. The Court is required to sentence a defendant below the advisory guideline range if such a sentence is sufficient to achieve the purposes of sentencing. *Id*. Mr. Gilliam requests the Court to impose a sentence of 60 months, the statutory mandatory minimum sentence, followed by supervised release. This recommendation is sufficient to adequately addresses society's needs of punishment and deterrence, and provide Mr. Gilliam with appropriate rehabilitation opportunites, without being longer than necessary.

II. Factual and Procedural Background

The Westerly, RI, Police, in conjunction with ATF agents, arrested Mr. Gilliam on January 9, 2007. The government obtained this indictment charging possession of over 5 grams of cocaine base with the intent to distribute, and Mr. Gilliam appeared for arraignment before the court on March 19, 2007. Mr. Gilliam pled guilty to the charge on May 31, 2007, and is scheduled for sentencing on December 14, 2007.

III. Sentencing Considerations

A. General

The Court takes guidance in sentencing from 18 U.S.C. § 3553(a). The statute instructs the district court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing listed in subsection (a)(2).[1] The district judge must assess, analyze and consider the particular facts of the present offense and the unique characteristics of the defendant before the court. 18 U.S.C. § 3553(a)(1). The judge then uses that individual information to determine an appropriate sentence.

Under the statute, the Court must also consider general information including the types of sentences available and the advisory guideline range. 18 U.S.C. § 3553(a)(4) & (5). Congress tasked the Sentencing Commission to develop guidelines for "categories of offenses" and "categories of defendants," (28 U.S.C. § 994(c) & (d)), in a manner consistent with 18 U.S.C. § 3553(a)(2). 28 U.S.C. § 991(b)(1)(A). The Commission was not instructed, however, to weigh individual characteristics or effectuate the parsimony principle into the guidelines.

The First Circuit has held that the advisory guideline range in an individual case is not just a mere factor in the § 3553(a) list. *United States v. Jimenez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006); *see also United States v. Thurston*, 456 F.3d 211, 215 (1st Cir. 2006), *United States v. Smith*, 445 F.3d 1, 4 (1st Cir. 2006). The Circuit Court reasoned the guidelines should carry more weight than the other considerations because they "represent the only integration of the multiple sentencing factors set forth in § 3553(a), often reflect past practice, and bear the imprimatur of the Sentencing Commission." *Smith* 445 F.3d at 4. Despite the declaration of heightened importance, the guidelines still reflect generalizations in sentencing. *Jimenez-Beltre*, 440 F.3d at 518. While this standard has prevailed since *United States v. Booker*[2], the decision in *Rita v. United States*[3] clearly shows that the heightened importance guidelines-centric method is unconstitutional at the district court level.

---

[1] The statute requires the sentence to reflect the basic aims of sentencing, including just punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a)(2).

[2] 543 U.S. 220 (2005).

[3] 551 U.S. ___, 2007 U.S. LEXIS 8269 (2007).

The United States Supreme Court sought to clarify post-*Booker* sentencing in *Rita*. It held that a district court could not apply a presumption of reasonableness to suggested advisory guideline ranges. *Rita*, 2007 U.S. LEXIS 8269, **16-17, **25. The Court reserved a non-binding rebuttable presumption on appellate review reasoning that if the Commission and sentencing court arrived at the same sentencing range independently then that decision should be accorded some deference. *Id.* at **16-19. That holding conflicts with First Circuit practice, and local practice here in the District of Rhode Island, because *Jimenez-Beltre*, *Smith*, and *Thurston* value the advisory guideline more than the sentencing court's own assessment under § 3553(a).

The basis for the heightened importance standard is flawed. The Commission aspired to integrate the factors of § 3553(a) into the guidelines, but the statute, 28 U.S.C. § 991(b)(1)(A), only obligates them to incorporate the purposes for sentencing under § 3553(a)(2). Further, the guidelines simply cannot incorporate the parsimony principle, the unique character of the defendant, or the unique facts of the offense into the guidelines. The Commission studied pre-guidelines sentencing practices in an effort to place a sentencing value on certain crimes and mitigating or aggravating factors. *See* U.S.S.G. § 1A1.1 (Part A, 3). Today, however, the resulting guidelines rarely reflect past practices. For example, the guidelines did not account for the blanket increase in time of incarceration due to the abolition of parole. Also, the entire controlled substance guideline framework in U.S.S.G. § 2D1.2 merely parrots the mandatory minimum sentences in the 1986 Anti-Drug Abuse Act (now 21 U.S.C. § 841). With regard to the illegal reentry guideline present here, past practice in 1987 was an offense level of 6; the offense level here now is 24. *See infra* § C(1). As for the Commission's imprimatur as the expert body on sentencing, its complete repudiation of the crack cocaine guidelines has not resulted in significant change, which brings into question the Commission's actual power and influence. Lastly, the Commission is tasked to continue studying sentencing and adjust the guidelines as necessary. *See* 28 U.S.C. § 994(o); U.S.S.G. § 1A1.1. Those adjustments have resulted in over 700 amendments since 1987, with only a handful resulting in lower guideline ranges. Under these circumstances, holding the advisory guidelines in higher regard than the other § 3553(a) considerations undermines the sentencing process.

The sentencing judge is in the best position to accurately and efficiently determine the appropriate sentence in an individual case. Congress has charged the district court with that duty.

18 U.S.C. § 3553(a). Only the judge can assess the character and background of an individual. Only the judge can enforce the parsimony directive. Only the judge can look the defendant in the eye at sentencing. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). While the advisory guidelines continue to be part of the sentencing process, they cannot occupy the preeminent position due to their deficiencies. The sentencing court must "calculate the advisory sentencing guideline range accurately, so that they can derive whatever insight the guidelines have to offer, but ultimately they must sentence based on 18 U.S.C. § 3553(a) without a thumb on the scale favoring a guideline sentence." *United States v. Sachsenmaier*, 491 F.3d 680, 685 (7th Cir. 2007) (interpreting *Rita)*. This Court must determine the appropriate sentence, one that is sufficient but not greater than necessary, by incorporating all of the considerations under § 3553(a).

B. Personal Background

Mr. Gilliam grew up in an average home with his parents and his three brothers. His childhood was somewhat unremarkable except for the breakup of his parents' marriage when he was 16 years old. The split between his parents significantly influenced his subsequent behavior. First, just prior to the divorce, Jason dropped out of high school as a freshman with failing grades. Next he failed to complete a Job Corps training program. Also during this time he began to hang around with "the wrong crowd" and started using marijuana.

In the next several years Mr. Gilliam had trouble holding jobs and had several contacts with the criminal justice system. His inability to hold on to a job and his contacts with individuals involved in drug trafficking led him to dealing drugs to support his habit and himself. Ironically, his arrest in this instance has led him to a greater understanding of how he will conduct himself after his sentence is complete.

Since his arrest Mr. Gilliam has approached his situation with an extremely positive attitude. Though lacking in significant educational opportunities at Wyatt, Mr. Gilliam has successfully participated in a bible study course piling up nine certificates for his efforts. He hopes to continue

his education and job training when he serves with the BOP. He has worked in several jobs at the facility including the non-paying Captain's Crew, the kitchen, and as a porter. He has also maintained his positive outlook with regard to his family. Specifically, his girlfriend gave birth to his daughter after his arrest. He has missed out on much of his daughter's life, but is very upbeat about the time he will have with her after he completes his sentence.

C. Nature of the Offense

Drug dealing is a very serious crime and Mr. Gilliam absolutely understands how his poor decisions have negatively affected his life and those around him. The federal sentencing regime, however, patently punishes crack cocaine dealing at an unjustifiable level. The statutory mandatory minimum sentence represents a sentence greater than necessary here, but is also the shortest length of imprisonment available to the Court.

1. Disparity a Real Consideration

The powder/crack sentencing disparity continues to be a completely unjustified portion of the Federal sentencing structure. The United States Sentencing Commission has issued three reports to Congress detailing the lack of justification for the harsh treatment of cocaine base over cocaine powder. Report to Congress: Cocaine and Federal Sentencing Policy (May 2002) ("2002 Report"); Special Report to Congress: Cocaine and Federal Sentencing Policy (April 1997) ("1997 Report"); Special report to Congress: Cocaine and Federal Sentencing Policy (February 1995) ("1995 Report"). All three Commission reports "unanimously and firmly concluded that the various Congressional objectives can be achieved more effectively by decreasing substantially the 100 to 1 drug quantity ratio." 2002 Report at viii. *See also* 1995 Report at xvi; 1997 Report at 2-3.[4] After thorough study of sentencing in crack cocaine prosecutions the Commission determined that the conditions and presumptions on which Congress originally relied for the heightened penalties - that is the presumption of violence, higher addiction rates, greater availability, and more deleterious

[4] Although the Commission has amended the advisory sentencing guidelines with regard to crack cocaine offenses which resulted in the lowering of the 100 to 1 powder to crack penalty disparity, that penalty ratio still exists under the statute, 21 U.S.C. § 841.

health effects - did not in fact transpire. *See generally* 2002 Report. The Commission determined early on that it had only considered the quantity of cocaine when establishing the guideline, and failed to look at a number of other important offense and offender characteristics. Those other factors include the geographic range of the defendant's illegal activity, the profit to be reaped by a defendant, the defendant's role as a retail street dealer rather than a wholesale distributor, the lack of violence associated with the offense, the absence of a weapon, the flattening and inversion of penalties versus cocaine suppliers (dealers of large quantities of powder cocaine), the absence of juveniles in the offense, and the lack of psycho-pharmacologically induced crime. 1995 Report at 168-175, 193-197. Since the 1995 Report, the Commission has consistently found no difference between the physiological effects of crack versus powder, and also that an *unwarranted* disparity existed because: 1) between 85% and 90% of crack defendant's are African American; 2) street level dealers regularly receive longer sentences than their more culpable suppliers; and 3) the value of the cocaine involved varied disparately compared to the penalty imposed. *Id*. at 173 (emphasis supplied). Despite the Commission's well supported view, Congress has failed to act.[5]

Since *United States v. Booker*, 543 U.S. 220 (2005), this Court has been free from the sentencing guidelines to exercise its discretion in individual cases. This discretion particularly extends to the consideration of the nature of a controlled substance and the severity of the suggested guideline range in drug trafficking cases. *United States v. Pho*, 433 F.3d 53, 64-65 (1st Cir. 2006). Other circuit courts of appeals have also supported the consideration of the powder versus crack cocaine disparity for sentencing purposes; the D.C. Court of Appeals recently held it was error not to consider the disparity when determining the sentence. *United States v. Pickett*, 475 F.3d 1347,

---

[5] The Commission has recently amended the crack cocaine guidelines which lowered 100 to 1 powder to crack penalty ratio and ameliorating the problem by a small measure, but the basis for that reduction was necessarily couched as making the offense levels directly coincide with the mandatory minimum sentence in the statute. *See* U.S.S.G. App. C, Amend 706. For example, the mandatory minimum for possession of over 5 grams of cocaine base, 60 months, now falls in the middle of the corresponding advisory sentencing range; previously the offense level corresponded to a range of at least 63 months in prison.

1355-56 (D.C. Cir. 2007).[6] In the District of Rhode Island, the Court has typically recognized the disparate treatment of crack cocaine and powder cocaine when sentencing in crack cases. *See United States v. Perry*, 389 F. Supp. 2d 278, 304 (D.R.I. 2005) ("when a guidelines sentence involves a nearly impossible-to-justify disparity such as this, the sentence neither reflects the seriousness of the offense, nor promotes general respect for the criminal justice system"). In order to comply with 18 U.S.C. § 3553(a), the Court must consider the unjustified penalty disparity between powder to crack cocaine and how it affects the §3553(a) sentencing factors, like seriousness of the offense and promotion of respect for the law, in this instance.

2. Disparity Unconstitutional

The 100:1 powder to crack sentencing disparity is unconstitutional.[7] Congress proposed, imposed, and has maintained the disparity on bases, including protection of the African American community, which represent both benign and purposeful discrimination.

In 1995 the Commission proposed a correction to the 100:1 penalty ratio. The proposal abolished the disparity while creating enhancements for certain aggravating offense characteristics. Congress rejected the proposal, but recognized the gross disparity in the treatment of crack and powder cocaine offenses. Federal Sentencing Guidelines Amendment Disapproval Act, Pub. L. No. 104-38, 109 Stat. 334 (1995) (§ 2(a)(2) directing the Commission to revise the penalty ratio consistent with 18 U.S.C. 3553(a)). The rejection of the proposal centered on a discussion of the effect of crack cocaine trafficking in the African American community. The Commission's report detailed the unwarranted impact of harsh crack sentences on African American defendants. Congress, in debate of the Disapproval Act, upheld the disparity citing the purpose of protecting

---

[6] The issue is presently pending before the Supreme Court in *Kimbrough v. United States*, 05-4554.

[7] *See* fn. 5, *supra*, discussing the 100 to 1 penalty ratio existing in the statute only at this point.

African Americans from the crack trade.[8]

The Supreme Court has held that the use of race as a basis for government action is subject to strict scrutiny; the government must be pursuing a compelling state interest and the method must be narrowly drawn. *See Shaw v. Hunt*, 517 U.S. 899, 907-08 (1996). In that case the Court struck down a gerry-mandered voting district designed to create an African American majority in an attempt to increase the probability of electing minority, African American, officials. Clearly if the benign discrimination designed to increase minority representation in government cannot pass strict scrutiny, then the rationalization for harsh treatment of crack offenses as protecting African Americans must also fail the test. Criminalizing crack cocaine trafficking is a compelling state interest, but the current penalty disparity remains unfocused to address the harms. The Commission has attempted to more narrowly tailor the disparity between crack and powder cocaine through proposals in its reports to Congress in 1995, 1997, and 2002. It has proposed equal treatment for different types of cocaine, a 5:1 ratio, and a 20:1 ratio, and also proposed sentencing enhancements for aggravating factors including the use of violence and the employment of minors. *See generally,* 2002 Report, 1997 Report, 1995 Report. Congress, however, has completely failed to act on these proposals to more narrowly tailor the sentencing policy to address the actual harms.

The 100:1 powder to crack cocaine sentencing disparity also presents unconstitutional purposeful discrimination. Congress's rejection of the Commission's 1995 proposal occurred with the knowledge that 85% to 90% of crack defendants were African American. *See* 1995 Report at 156.[9] The Commission has now issued three reports throughly discrediting the purported rationales for the crack/powder disparity. The only Congressional action has been to disapprove the Commission's original proposed amendment, and otherwise to do nothing. Congress has reaffirmed the disparity in the sentencing almost entirely for racial reasons.

While the Supreme Court has made "unceasing efforts to eradicate racial prejudice from our

---

[8] Not necessarily an unique view, the D.C. Circuit Court also claimed that the harsh treatment of crack traffickers helped protect the African American community. *See United States v. Thompson*, 27 F.3d 671, 678 n, 3 (D.C. Cir. 1994).

[9] The trend continues; in fiscal year 2006 African Americans accounted for 81% of crack defendants. 2006 United States Sentencing Commission Statistic Sourcebook, Table 34.

criminal justice system," *Johnson v. California*, 543 U.S. 499, 512 (2005), Congress, unfortunately, in passing the Disapproval Act, has not followed suit with respect to crack cocaine offenses. Because Congress, knowing the disparate racial impact and lack of policy bases to justify the penalty differential, "reaffirmed ... at least in part" the enhanced penalties for crack cocaine because of its adverse impact on African-Americans, *United States v. Johnson*, 40 F.3d, 436, 439 (D.C.Cir. 1994), the existing penalty scheme is invalid on equal protection and due process grounds.

D. Criminal History

Mr. Gilliam has a relatively short criminal record with three prior convictions of middling seriousness. Also important is the age of these convictions; all 4 to 6 years old. His prior drug possession is a concern here because this offense involves dealing cocaine. The assault conviction stands out because the guidelines assess 2 criminal history points for the 60 day jail sentence, but also because of the graphic description in the PSR. ¶27. It is true that Mr. Gilliam was involved in a fight in which one individual was stabbed, but it also true that this donnybrook involved a total of 8 to 10 individuals and Mr. Gilliam neither stabbed the injured party nor knew anyone intended to stab anyone else. Several other young men (17 to 19 year old boys actually) were charged for their involvement in the fight, with the "stabber" receiving approximately two years in jail. Mr. Gilliam is not proud of his participation in this event, but the Court needs to understand he had no part in the stabbing itself. That being said, nothing about Mr. Gilliam's criminal record establishes any aggravating factor for this sentencing which should cause the Court to consider a sentence above the mandatory minimum.

E. The Minimally Sufficient Sentence

The sentencing statute directs the Court to impose a parsimonious sentence which supports the purposes of sentencing: just punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a). These purposes fail to support the advisory guideline range recommended here.

Just punishment must reflect the seriousness of the crime, the culpability of the defendant, and must also promote respect for the law and process. The crack cocaine mandatory minimum and guideline sentences cannot present just punishment because they are based on Congress's mistaken

perceptions of danger in 1986, and on its unconstitutional paternalism over the African American community. The result has been the draconian imprisonment of low level crack cocaine dealers for the past 20 years, with over 80% of such prisoners being African American. This relentless sentencing policy has not resulted in the lower use or distribution of crack cocaine. Against this backdrop no serious argument can be made that the crack cocaine sentencing policy, including the mandatory minimum sentence here, promotes respect, rather than condemnation, for the law

Specifically deterring Mr. Gilliam does not require any additional time in prison. He has been in custody for 11 months and has begun to see his life pass without him through the birth and growth of his daughter. He understands his transgression and has no desire to ever go back to prison. He has made good use of the time he has spent in custody and looks forward to participating in more programs with the BOP. As for general deterrence, as stated the crack sentencing policy does not promote respect for the law and process. Harsh sentences get people's attention, but in the case of crack cocaine it does not necessarily translate into effective deterrence.

The purpose of incapacitation serves to punish a defendant as well as protect society from the individual. Neither reason justifies the guideline recommendation in this case. Mr. Gilliam is not a danger to society and is committed to moving his life forward to become a productive citizen. The mandatory minimum sentences presents ample punishment for Mr. Gilliam. That time also presents ample time for Mr. Gilliam to rehabilitate himself. Through education and other programs with the BOP, Mr. Gilliam will increase his chances of a successful rehabilitation.

When determining the minimally-sufficient sentence, the Court must basically ask whether a more severe sentence would achieve <u>greater</u> justice, deterrence, incapacitation, or rehabilitation. For Mr. Gilliam, the statutory mandatory minimum sentence of 60 months is the shortest period of incarceration that the Court may impose. There is no justification for any additional time in custudy.

## IV. Conclusion

For all of these reasons, Mr. Gilliam asks the Court to impose a 60 month sentence.

Respectfully submitted
Jason Gilliam
By his attorney,

/s/ Kevin J. Fitzgerald, 5775
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

CERTIFICATION

I hereby certify that a copy of this motion was hand-delivered to Heather McLoughlin, United States Probation Officer, and Sandra Beckner, Assistant United States Attorney, on December 7, 2007.

/s/ Kevin J. Fitzgerald